IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  12-cv-03075-MSK-MEH

ATORRUS RAINER,

        Plaintiff,

v.

SERGEANT OKENTUMBI, in his individual and official capacities, and
JOHN AND JANE DOES 1 THROUGH 20, in their individual and official capacities,

        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

     Before the Court is a Motion to Dismiss [filed April 26, 2013; docket #21] filed by Defendant Sergeant Okenumbi.[1]  In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. LCivR 72.1C, the matter is referred to this Court for recommendation.  (Docket #12.)  With the motion fully briefed, the Court determines that oral argument would not materially assist in its adjudication.  For the reasons stated below, the Court **RECOMMENDS** Defendant's motion be **GRANTED** and that Plaintiff receive leave to file an amended complaint.[2]

---

[1] Plaintiff's Complaint also names twenty (20) unidentified Does as Defendants.  However, the Court observes that the deadline for service established by Fed. R. Civ. P. 4(m) has passed.  Thus, the Court will address Does 1-20 in a separate order to show cause.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not

# BACKGROUND

### I.    Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions or mere conclusory allegations) made by Plaintiff (or construed liberally) in Plaintiff's Prisoner Complaint [docket #1], which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must limit its review to the four corners of the Complaint but may also consider documents attached to the pleadings as exhibits.[3]  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

Plaintiff is a prisoner incarcerated at Sterling Correctional Facility ("SCF") in Sterling, Colorado, in Living Unit 4-A.  (Docket #1 at 2.)  Plaintiff alleges that on January 11, 2011, at approximately 3 a.m., he experienced the onset of a medical condition that caused extreme pain.  (*Id.* at 3.)  Plaintiff's cellmate pressed the intercom to summon help; no one answered and Plaintiff proceeded to vomit blood and bile, at which time an officer from the Living Unit 4 control tower contacted the cell through the intercom system.  (*Id.*)  The officer inquired what the

---

consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

[3] Plaintiff attaches an additional exhibit to his response to Defendant's Motion to Dismiss.  The Court will not look beyond the four corners of the Complaint and exhibits attached thereto in analyzing Plaintiff's sufficiency of pleadings in regard to the present Motion to Dismiss; however, the Court will consider the additional material in determining whether Plaintiff should be given leave to amend.

problem was, and the cellmate responded that Plaintiff was on the floor in extreme pain and throwing up.  (*Id.*)  The officer called the Living Unit 4 office, and Defendant Okentumbi, who is an SCF sergeant, and another officer went to Plaintiff's cell and observed Plaintiff's condition. (*Id.*) Defendant saw Plaintiff in the fetal position on the cell floor with bloody vomit all over his body and the surrounding floor.   (*Id.*)   Defendant called through his "call set pack"[4] for what Plaintiff refers to as "first responders" to report to Plaintiff's cell.  (*Id.* at 4.)

Between 3:05 a.m. and 3:10 a.m., four other responders arrived and called to the office for the cell to be opened; however, the office rejected that request because no medical staff was present.  (*Id.*)  While the identity of the person who denied the request is not known, Plaintiff asserts upon his information and belief that the person was a captain serving as a shift commander that night.  (*Id.*)  The officer who had called for help, identified in the Complaint only as an African-American male, apologized to Plaintiff and said Plaintiff would get help at 6 a.m.  (*Id.*)  When officers left, Plaintiff began crying and vomiting "a copious amount of blood," which "coated most of the floor and the rug in the cell."  (*Id.*)  As the vomiting of blood continued, Plaintiff asserts that his cellmate again called for help through the intercom, but the officer on the other end of the intercom responded, "There's nothing we can do."  (*Id.*)  Plaintiff was convinced he was going to die.  (*Id.*)  Plaintiff asserts that Defendant Okentumbi, who Plaintiff represents is Caucasian, passed by the cell several times and looked inside.  (*Id.*) During the 4 a.m. count of inmates, Defendant asked Plaintiff if he was okay, to which Plaintiff replied, "No, I'm in pain."  (*Id.*)  Defendant told him to "hang in there."  (*Id.*)  Plaintiff asserts that

---

[4]  Plaintiff uses the term "call set pack" to describe the device used by officers to summon help.

Defendant, as a gatekeeper to Plaintiff's medical care, should have gone above other officers' orders and secured care for Plaintiff.[5] (*Id.* at 7.)

At 6 a.m., the cell doors were unlocked when the unit's day hall opened, yet no medical personnel arrived.[6] (*Id.*)  At 6:30 a.m., the cellmate opened the door for Plaintiff who, unable to walk, crawled out of his blood-laden cell to the third-tier railing that opens to a day hall below and called out to an inmate for help using the intercom to the Unit 4 control tower and said, "There's an inmate down."[7] (*Id.* at 5.)  Plaintiff received help at that time when Lieutenant Vicki Page responded to the call and saw large amounts of blood on Plaintiff and his cell floor, causing her to use her set pack to seek additional officers, who then carried him to the day room below

---

[5] Plaintiff's Complaint asserts the following in his Cause of Action [docket #1 at 7]: "The Defendants had a duty, and the ability, to provide medical treatment 24 hours a day, as established in the CDOC Administrative Regulation 700-02 (IV)(A)(1) and (2).  This was the case whether or not medical personnel were on grounds at SCF at the time of Mr. Rainer's serious medical condition.  AR 700-02(IV)(A)(1)(2)(a)(1) provides that the Clinical Services emergency plan will include 'On-site emergency first aid and crisis intervention.'  And, 7800-02(IV)(A)(2)(a)(2) provides for 'Emergency evacuation of the offender from the facility.'  Finally, 700-02(IV)(A)(2)(a)(5) provides for an 'Emergency on-call physician ... when the mergency (sic) health facility is located in a nearby community.'  This Ar (sic) was in effect at the time Mr. Rainer was experiencing severe pain and throwing up blood, on January 11, 2011." (Ellipses in original.)

[6] Plaintiff does not indicate how the cell doors were unlocked but they appear within context to have been unlocked remotely.

[7] Plaintiff's Complaint includes three affidavits that corroborate facts stated in the Complaint. The affidavit of Clifton Grady Ashley, Plaintiff's cellmate, describes how he called for help after seeing Plaintiff "crying, moaning and vomitting (sic)," that Plaintiff was in "excruciating pain," that staff told Plaintiff that "there was nothing they could do for him because there were no nurses available so early in the morning" and that "nothing was done until after 6:00 a.m." (*Id.* at 19.)  The affidavit of Daniel Gonzales, a fellow prisoner sitting in the dayroom waiting for breakfast, states that Plaintiff called out to him for help after the cell door unlocked.  (*Id.* at 28.) The affidavit of Frederick Robinson, a prisoner assigned to clean Plaintiff's cell after Plaintiff was taken to medical for the first time for the condition discussed herein, describes the cell's condition: "... (b)lood an (sic) vomit covered the floor and cell wall.   I also saw that portions of the toilet/sink, a rug, and articles of clothing were stained and soaked in blood and vomit."  (*Id.* at 17.)

where a wheelchair was waiting.  (*Id*. at 5.)  Officers also gave Plaintiff a towel in which to catch his vomit and took him to see SCF medical personnel, who diagnosed him with kidney stones, gave him IV fluids and "Tylenol 3" pain killers, and returned him to his cell.  (*Id*. at 5, 9-10.)

Plaintiff's medical records appended to his Complaint indicate he returned to see medical personnel two more times that day, at approximately 11:30 a.m. complaining of severe pain despite medication, and at 9 p.m. complaining of intolerable pain that prevented him from walking.  (*Id*. at 11-12.)  He returned to seek medical care again at approximately 4:40 p.m. on January 12, 2011, and reported he had passed a kidney stone but still had pain.[8]  (*Id*. at 14.)  Medical records from January 13, 2011, state that his residual pain was likely caused by his lack of bowel movements over the previous days.  (*Id*. at 16.)

## II.    Procedural History

Plaintiff on November 26, 2011, initiated this action *pro se* by filing a Complaint pursuant to 42 U.S.C. § 1983, asserting a single cause of action against Defendant for violating his Eighth Amendment rights.  (Docket #1.)  In essence, Plaintiff argues that Defendant and John and Jane Does 1 through 20, in their individual and official capacities, violated his Eighth Amendment rights by deliberately restricting his access to medical care for three-and-a-half hours when he was in pain and vomiting blood in his cell.  (*Id*. at 6-7.)  As relief, Plaintiff seeks nominal, compensatory and punitive damages, and an injunction from the Court ordering Defendants to develop and implement an emergency medical services plan to ensure he and other inmates receive medical care more swiftly under specific conditions.  (*Id.* at 20.)

---

[8] The medical record from the 4:40 p.m. visit on January 12, 2011, also states that Plaintiff was laughing and not seeming to be in quite as much discomfort as the previous visit.

Defendant's Motion, filed on April 26, 2013, argues that Plaintiff's official capacity claims are barred by the Eleventh Amendment, that the Eighth Amendment claim fails as a matter of law, that Plaintiff's request for compensatory damages is limited by the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), that Plaintiff's request for punitive damages fails as a matter of law, and that Defendant is entitled to qualified immunity.  (Docket #21.)

On May 17, 2013, Plaintiff filed his Response to Defendants' (sic) Motion to Dismiss, more fully expounding Plaintiff's position that his Eighth Amendment claim is valid and that the Eleventh Amendment presents no bar to its adjudication.  (Docket #31 at 3-7.)  Plaintiff's response also argues damages are justified and disputes Defendant's entitlement to qualified immunity.  (*Id*. at 8-13.)  On May 31, 2013, Defendant filed his Reply in Support of Motion to Dismiss, reiterating the position that Plaintiff's Eighth Amendment cause of action fails to state a claim upon which relief can be granted because Defendant did not act as a gatekeeper to Plaintiff's care and did not act with deliberate indifference.  (Docket #32 at 1-3.)  Defendant's reply also argues that any compensatory damages are limited by the physical injury requirement of the PLRA and that Defendant is entitled to qualified immunity.  (Docket #32 at 4.)

## STANDARDS OF REVIEW

### I.     Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers.  [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)

(quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## II.      Dismissal Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case but only a determination that the court lacks authority to adjudicate the matter.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to

mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir.

1971).    The burden of establishing subject matter jurisdiction is on the party asserting

jurisdiction.  *See Basso*, 495 F.2d at 909.  Accordingly, Plaintiff in this case bears the burden of

establishing that this Court has jurisdiction to hear his claims.  Further, under a 12(b)(1) motion,

"a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary

hearing to resolve disputed jurisdictional facts.'"  *Stuart v. Colorado Interstate Gas Co.*, 271

F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.

1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not

convert the motion into a Rule 56 motion."  *Id.*

### III.    Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678

(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations in the

complaint "must be enough to raise a right to relief above the speculative level."  *Christy Sports,*

*LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  Plausibility, in the

context of a motion to dismiss, means that the plaintiff pled facts that allow "the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

at 678.

The Rule 12(b)(6) evaluation requires two prongs of analysis.  First, the Court identifies

"the allegations in the complaint that are not entitled to the assumption of truth," that is, those

allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id*. at 680.

Second, the Court considers the factual allegations "to determine if they plausibly suggest an

entitlement to relief." *Id*. at 681.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 680.   However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.   The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

Plaintiff alleges that Defendant, in his official and individual capacities, knew of and disregarded an excessive risk to Plaintiff's health and safety by restricting Plaintiff's access to necessary medical care.   (Docket #1 at 6.)    According to Plaintiff, this conduct amounts to deliberate indifference in violation of the Eighth Amendment.    Defendant filed the present Motion to Dismiss on April 26, 2013.  (Docket #21.)  As noted above, Defendant argues that: 1) Plaintiff's claims against him in his official capacity are barred by the Eleventh Amendment; 2) Plaintiff fails to state a cognizable Eighth Amendment claim; 3) Plaintiff's request for compensatory damages is limited by the physical injury requirement of the PLRA; 4) Plaintiff's

request for punitive damages fails; and 5) Defendant is entitled to qualified immunity. (*Id.* at 2-9.)

Because Defendant's assertion of sovereign immunity affects the Court's jurisdiction, the Court will begin its analysis there.   The Court will then assess Defendant's entitlement to qualified immunity, focusing on whether Plaintiff has plausibly alleged a violation of the Eighth Amendment.   This evaluation will also impact the viability of Plaintiff's official capacity claim. Finally, the Court will address the Plaintiff's request for damages.

## I.   Sovereign Immunity

Plaintiff's Complaint indicates Defendant is sued in his individual and official capacities. (Docket #1 at 1.)   Defendant argues that Plaintiff's official capacity claims are barred by the Eleventh Amendment.   (Docket #21 at 2.)   The Court agrees that Defendant is not subject to suit in his official capacity for damages; however, Defendant may be subject to suit for injunctive relief.

Claims against state officials in their official capacities are essentially claims against the state entity.   *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted).   It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."   *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).   Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their

agencies.  *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785–86 (1991).

Section 1983 did not abrogate the Eleventh Amendment nor does it provide a jurisdictional basis

for suit against a state official acting in his or her official capacity.  *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 71 (1989).

The Supreme Court has recognized an exception to the Eleventh Amendment for such

actions where a plaintiff is seeking prospective enforcement of his or her federal rights.  *See Ex*

*parte Young,* 209 U.S. 123, 159-60 (1908).  But *Young* makes clear that this exception "may not

be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the

past" or as a means for seeking money damages.  *Buchwald v. Univ. of N.M. Sch. of Med.,* 159

F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, in addition to money damages, which the Court finds are barred by the Eleventh

Amendment, Plaintiff seeks an injunction compelling the Defendants to develop and implement

an adequate emergency care plan for inmates.  (Docket #1 at 20.)  Plaintiff requests that the

injunction include training of SCF staff so that they understand emergency procedures and what

conditions warrant access to medical care.  (*Id.*)  Plaintiff also requests the new clinical services

plan be "drafted in such a way that if an inmate is in serious pain and is throwing up a lot of

blood, emergency medical care access will be provided."  (*Id.*)  To the extent that Plaintiff seeks

by this injunction to declare Defendant has violated Plaintiff's rights in the past, the Court finds

that sovereign immunity applies pursuant to *Young*.  However, to the extent Plaintiff brings suit

against Defendant acting in his official capacity to garner prospective relief, sovereign immunity

offers no protection.  *See Young*, 209 U.S. at 159-60.

Even if sovereign immunity does not prevent Plaintiff from proceeding with his request for prospective injunctive relief against Defendant in his official capacity, Plaintiff must still demonstrate that Defendant violated his constitutional rights in order to prevail under Section 1983. *Stuart v. Jackson*, 24 F. App'x 943, 956 (10th Cir. 2001) ("[A] plaintiff suing an official in his official capacity must prove [*inter alia*] that a municipal employee committed a constitutional violation[.]"). The Court considers next whether Plaintiff has plausibly established that Defendant violated his constitutional rights.

## II.     Qualified Immunity

Defendant asserts that he is entitled to qualified immunity for claims against him in his individual capacity. (Docket #21 at 9.) Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 (2009)). In determining whether plaintiff has met his burden of establishing that his constitutional rights were both clearly established and violated by defendant,

the court construes the facts in the light most favorable to plaintiff, who is the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The Supreme Court has discarded a review process that required courts to examine the elements of qualified immunity sequentially, first considering whether a right has been violated, and then second—if the court concludes a right has been violated—whether that right was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232-243. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

In determining whether Defendant is entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim, the Court will begin by determining whether Plaintiff has plausibly established a violation of his rights and, if so, whether those rights were clearly established at the time of the violation.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

13

Plaintiff must meet both the objective and subjective components constituting the test for Eighth Amendment deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)).

In this case, Plaintiff alleges that Defendant violated the Eighth Amendment by failing to take reasonable measures to provide Plaintiff access to necessary medical care when Plaintiff had a serious medical need -- in short, Plaintiff argues that the delay of medical care reflects deliberate indifference. (Docket #1 at 6.) Specifically, Plaintiff contends that Defendant allowed him to suffer for three-and-a-half hours with severe pain and bloody vomiting and withheld medical care from him by not going higher up the chain of command to request more timely care. (*Id.* at 6-7.) In evaluating the sufficiency of Plaintiff's Eighth Amendment claim, the Court will consider whether Plaintiff can demonstrate: (1) serious medical need, (2) to which Defendant was deliberately indifferent, (3) causing, (4) substantial harm.

A.   <u>Serious Medical Need</u>

In order to meet the objective standard of an Eighth Amendment claim under a failure-to-prevent-harm theory, a plaintiff "must show that he is incarcerated under conditions posing a

14

substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  A "medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  Whether "a medical need is sufficiently serious" is not limited to "the symptoms presented at the time the prison employee has contact with the prisoner." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).  "[T]he question raised by the objective prong of the deliberate indifference test is whether the alleged harm . . .  is sufficiently serious . . . , rather than whether the symptoms displayed to the prison employee are sufficiently serious." *Id.* Here, Defendant does not dispute the assertion that Plaintiff's condition was sufficiently serious, so the Court will conclude for the purposes of the present motion that Plaintiff has met this requirement.

B.    Substantial Harm

A delay in medical care "'only constitutes an Eighth Amendment violation where the plaintiff can show [that] the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (quoting *Oxendine*, 241 F.3d at 1276.  Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).  Substantial harm may be met either when "the more timely receipt of medical treatment would have minimized or prevented the [ultimate] harm" or when the plaintiff suffers an "intermediate injury, such as the pain experienced while waiting for treatment." *Kikumura*, 461 F.3d at 1292.

Under certain circumstances, even a delay of hours may result in substantial harm.  *See Mata*, 427 F.3d at 755 (collecting cases).  For example, in *Sealock*, the plaintiff told a

correctional officer at approximately 1:30 a.m. that he "had a crushing pain in his chest," was "having trouble breathing," and "had been vomiting all night." 218 F.3d 1205, 1207-09 (10th Cir. 2000). The plaintiff was told to wait until 6:00 a.m. to see a physician. *Id.* at 1208. After seeing a physician at the correctional facility's infirmary at 8:00 a.m., he was moved to a hospital and found to have "suffered a major heart attack." *Id.* The court held that the hours-long "pain and suffering" experienced by the plaintiff because of the delay in medical treatment was sufficient to "establish[] the objective element of the deliberate indifference test." *Id.* at 1210. The court also noted that because of the severity of a major heart attack, the plaintiff would have met the objective prong "[e]ven if [he] failed to show that his heart was damaged by the delay, [because], we believe he has shown that his need was sufficiently serious to require prompt medical attention." *Id.*

In *Kikumura*, the plaintiff suffered from "hyponatraemic encephalopathy, a serious medical condition caused by low sodium levels" that is considered a "medical emergency." 461 F.3d at 1274. The plaintiff was initially treated by a doctor at 3:30 p.m., but that doctor failed to properly diagnose the hyponatraemic encephalopathy and sent the plaintiff back to his cell. *Id.* At 10:20 p.m., the plaintiff arrived at the prison's infirmary where, after spending hours with untreated hyponatraemic encephalopathy, the doctor determined that he was "at the point of death." *Id.* at 1275. The court concluded that the severity of the illness and the "tortuous" pain allegedly experienced due to delayed medical care satisfied the "objective component of a deliberate indifference claim." *Id.* at 1293.

In *Oxendine*, the plaintiff severed his finger in a cell door and a facility doctor surgically reattached it. 241 F.3d at 1277. Less than eight days after the surgery, the finger began to

blacken but the doctor did not seek specialist care for at least two weeks.  *Id*.  By that time, "a substantial portion of the reattached finger had already been lost to decay."  *Id.* at 1278.  The court concluded that the plaintiff experienced sufficient pain because of the delay to support a claim of deliberate indifference.  *Id.* at 1278-79.

In this case, Plaintiff claims that he experienced severe pain and vomited blood over a period of three-and-a-half hours without receiving medical care.  (Docket #1 at 3-4.)  Plaintiff's medical records show that his pain did not resolve even with care given after 6:30 a.m., that he was diagnosed with probable kidney stones that caused extreme ongoing pain, and that he returned multiple times to the medical providers and continued to indicate ongoing pain after care and medicine had been provided.  (*Id*. at 9-16.)  The medical records do not indicate any residual physical injury caused by the delay in treatment.  (*Id.*)  Despite these facts, Plaintiff's extreme pain and bloody vomiting [docket #1 at 3-5] may be enough to establish substantial harm.  (Docket #1 at 3-5.)  Pain and vomiting while waiting for care for a medical condition can rise to the level of substantial harm.  *See Kikumura*, 461 F.3d at 1292-93 (holding "severe vomiting," "extreme cramps," and confusion because of brain damage caused by hyponatremia were substantial intermediate harms).  In *Sealock*, the plaintiff's intermediate injury was the pain he suffered because of the delay in medical treatment for a "major heart attack."  218 F.3d at 1210.  The Court therefore finds that Plaintiff has plausibly alleged that he experienced substantial harm.

C.    Deliberate Indifference

To satisfy the subjective component of an Eighth Amendment claim, a plaintiff must demonstrate the defendant "knew he faced a substantial risk of harm and disregarded that risk, by

failing to take reasonable measures to abate it." *Callahan,* 471 F.3d at 1159 (quoting *Kikumura,* 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura,* 461 F.3d at 1293 (quoting *Farmer,* 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves,* 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata*, 427 F.3d at 752). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata,* 427 F.3d at 755.

Determining whether a government official knew of a substantial risk to a detainee's health can be based on "inference from circumstantial evidence" and "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Sealock v. Colorado*, 218 F.3d 1205, 1210-11, 1213 (10th Cir. 2000) (affirming denial of summary judgment where there was evidence that at least one defendant had been informed of plaintiff's possible heart attack and where plaintiff exhibited symptoms consistent with a heart attack). A government official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (quoting *Garrett v. Stratman*, 254 F.3d 946, 949-950 (10th Cir. 2001).

In *Childress v. Harms*, 449 F. App'x 758, 759 (10th Cir. 2011), the plaintiff was taken to a county jail after police "determined he was so intoxicated that he was a danger to himself." After the plaintiff complained of "dizziness and ringing in his ears," two nurses evaluated him and agreed that he was intoxicated. *Id.* Several hours later, the plaintiff was reexamined and a

nurse attributed his confusion and slurred speech to intoxication. *Id*. Approximately one hour later, the plaintiff was taken to the hospital where it was determined that he had suffered a stroke. *Id*. The plaintiff then filed suit for deliberate indifference. *Id.* at 760. The Tenth Circuit, affirming the district court, held that the plaintiff's treating nurse was not deliberately indifferent. *Id.* at 762. Even though the treating nurse "recognized the possible symptoms of a stroke [including slurred speech, dizziness, limping, and elevated blood pressure] in [the plaintiff], those symptoms were also common to alcohol intoxication." *Id.* at 760-61. Because the nurse believed the plaintiff was suffering from intoxication, rather than from a stroke, he did not "[know] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 760-761 (quoting *Mata*, 427 F.3d at 751).

In this case, Plaintiff experienced severe pain from probable kidney stones. Like in *Childress*, the Plaintiff exhibited "nausea and vomiting" that may have been associated with a number of conditions. (Docket #1 at 3.) However, unlike the nurse in *Childress*, who "recognized the possible symptoms of a stroke," Plaintiff does not assert that Defendant, who is a guard and not medical personnel, recognized the symptoms of kidney stones or indicate that Defendant had any idea if treating Plaintiff earlier would have materially altered Plaintiff's pain or outcome. 449 F. App'x at 761. Instead, Plaintiff alleges that many defendants (but not specifically Defendant Okentumbi) were those who rejected his care, while Defendant Okentumbi actively checked on him and interacted with him. (*Id* at 4.)

Specifically, Plaintiff indicates that Defendant was one of the first officers to arrive, along with another officer, to check on Plaintiff after the first call for help. (*Id*. at 3.) After observing Plaintiff in the fetal position with bloody vomit all over his body and the surrounding

floor, Defendant asked Plaintiff about his problem and Plaintiff responded that he was in severe

pain. (*Id*. at 4.) Defendant then called for help. (*Id*.) Defendant continued to exhibit care for

Plaintiff by checking on him periodically and inquiring, "Rainer, are you okay?" (*Id*.) When

Plaintiff responded, "No. I'm in pain," Defendant "shook his head and said, 'Hang in there.'"

(*Id*.) Plaintiff does assert that Defendant "did not take reasonable measures to provide (Plaintiff)

access to medical care," and "could have gone above the Shift Commander's head to the Staff

Duty Officer to request medical care for (Plaintiff)." (*Id*. at 6-7.) However, Plaintiff has not

plausibly alleged that Defendant's actions—or inactions—meet the subjective standard of the

deliberate indifference test under *Olsen*, which requires Plaintiff to assert that a government

official was "aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists" and that he actually drew that inference.  312 F.3d at 1315.

D.    Causation

In addition to demonstrating that a defendant acted with deliberate indifference in

delaying treatment, the Tenth Circuit has also underscored the importance of causation, calling it

"a necessary element of a § 1983 action." *Sparks v. Rittenhouse*, 164 F. App'x 712, 718 (10th

Cir. 2006).  Plaintiff must plausibly allege that but for Defendant's deliberate indifference,

Plaintiff would not have experienced the substantial harm. *See Daniels v. Gilbreath*, 668 F.2d

477, 488-89 (10th Cir. 1982). In *Daniels*, the court reversed a jury verdict entered in favor of a

father whose son died suddenly after a physician at a county jail injected him with a particular

tranquilizer. *Id*. at 483-84.  Despite evidence that the physician ignored warnings of the son's

allergy to the tranquilizer, the *Daniels* court held that the facts did not support the jury's finding

of an Eighth Amendment violation. *Id*. at 487. In so holding, the court emphasized that "[t]he

causal element must, in a medical case like this, be proven by positive evidence," . . . not left to conjecture. *Id*. at 488.

At the outset, this case differs from *Daniels* in that Defendant was not a medical provider and, thus, was not responsible for the quality of care Plaintiff received.  In this respect, Defendant appears to be even less culpable than a physician administering improper care.  In any event, Plaintiff has not asserted, either directly or with facts, how a "more timely receipt of medical treatment would have minimized or prevented" his ultimate injury. *Kikumura*, 461 F.3d at 1292.  In actuality, even the initial medical treatment did not resolve Plaintiff's pain; multiple times after Plaintiff received treatment, Plaintiff returned to the medics for additional care for severe pain.  (Docket #1 at 11-12.)  Just five hours after first being taken to medics, he returned at 11:30 a.m. complaining of severe pain despite medication; he returned again at 9:00 p.m. complaining of intolerable pain that inhibited him from walking.  (*Id*.)  He once again went for care at 4:40 p.m. the next day and reported he had passed a kidney stone but still had pain, although the medical record also states that he was laughing and not seeming to be in quite as much discomfort as the previous visit.  (*Id*. at 14.)  Medical records from January 13, 2011, state that his residual pain was likely caused by his lack of bowel movements over the previous days. (*Id*. at 16.)  The record indicates no further physical residual injury to Plaintiff, nor does Plaintiff allege or assert that he would have experienced any less pain or would not have vomited blood if Defendant had provided earlier care.

The fact that Plaintiff continued to experience severe pain outside of the Defendant's custody and after care had been provided demonstrates that a three-and-a-half hour delay in treatment while in the custody of the Defendant did not increase his risk for pain—the risk was

already present and was not alleviated fully until the passing of the kidney stone despite many trips to the medics for treatment.  Because Plaintiff has failed to demonstrate how the alleged delay in medical treatment meets the causation element, Plaintiff has not pled sufficient facts to show that the Defendant violated his constitutional rights under the Eighth Amendment.  Thus, the Court must recommend dismissal of Plaintiff's Eighth Amendment claim based on lack of causation between Defendants' alleged action or inaction and any subsequent harm Plaintiff experienced.

E.      Summary

To summarize the Court's findings on Defendant's assertion of qualified immunity: Plaintiff has plausibly alleged the elements of both serious medical condition and substantial harm but has failed to plausibly allege the elements of deliberate indifference and causation. Therefore, the Court recommends the District Court find Defendant is entitled to qualified immunity with respect to Plaintiff's alleged Eighth Amendment claim and grant Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

III.    Damages

Although Plaintiff seeks only "nominal," "compensatory," and "punitive" damages from Defendants in his Request for Relief, Plaintiff refers to pain and suffering as a result of Defendants' alleged actions.   (Docket #1 at 4-6.)   Therefore, to the extent that Plaintiff's allegations may be construed as claims seeking damages for pain and suffering, Defendant argues that such claims should be dismissed because compensatory damages for any mental or emotional distress are barred by the physical injury requirement of the PLRA.  (Docket #21 at 7.)

Defendant also argues that Plaintiff's request for punitive damages fails.  (Docket #21 at 8.)  The Court will address each challenge to damages in turn.

A.    Compensatory Damages

The PLRA states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  The Tenth Circuit has held that the plain language of the PLRA "does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted."  *Searles v. Van Bebber*, 251 F.3d. 869, 876 (10th Cir. 2001).  As such, the Tenth Circuit indicated that the underlying substantive violation should not be separated from the resulting injury, such as mental or emotional injury, as a way of avoiding "the clear mandate of § 1997e."  *Id.*  The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional.

"While claims for mental and emotional distress are cognizable under § 1983 under 42 U.S.C. § 1997e(e) 'such a suit [by a prisoner] cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'"  *Lawson v. Engleman*, 67 F. App'x 524, 526-27 (10th Cir. 2003) ((quoting *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999)); *see also Turner v. Schultz*, 130 F.Supp.2d 1216, 1223 (D. Colo. 2001) (quoting *Perkins*, 165 F.3d at 807).  "[A] prisoner cannot satisfy Section 1997e(e) by  alleging only that he suffered from the physical manifestations of mental or emotional injuries."  *Hughes v. Colo. Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (citations omitted).

Defendant argues that because Plaintiff had no physical injury caused by Defendant, he has not met the PLRA's physical-injury requirement.  (Docket #21 at 7-8.)  Had Plaintiff only

alleged mental and emotional injury, the Court would agree.  However, it appears to the Court

that Plaintiff alleges he did suffer physical harm exceeding mere mental and emotional injury, as

he vomited significant amounts of blood and experienced intense pain.  (Docket #1 at 6.)  Thus,

the Court finds that PLRA does not prohibit Plaintiff from recovering damages for his alleged

physical injuries.

B.      Punitive Damages

Defendant also contends that Plaintiff's request for punitive damages must fail because

Plaintiff does not allege any facts that could reasonably support such an award.  (Docket #21 at

9.)

Even without a compensable injury, the PLRA does not bar punitive damages.  *Searles*,

251 F.3d at 880-81 ("as a general rule, punitive damages may be recovered for constitutional

violations without a showing of compensable injury").  However, punitive damages are to be

awarded as a mechanism to deter and punish when "the defendant's conduct is shown to be

motivated by evil motive or intent, or when it involves reckless or callous indifference to the

federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Plaintiff's

Complaint fails to plausibly allege this level of intent by Defendant.  Thus, the Court agrees that

Plaintiff's request for punitive damages is inappropriate and should be dismissed, accordingly.

IV.     **Leave to Amend**

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be

cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to

protect the interests of justice."  *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d

1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.

1986)).  As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the Complaint to cure the defective allegations.  *See Bellmon*, 935 F.2d at 1109-10.

Here, the Plaintiff has not previously amended his pleading and has not yet received guidance as to any defective allegations from the Court.  While the Court has relied only on the Plaintiff's Complaint and exhibits attached thereto for purposes of evaluating the present Motion to Dismiss, Plaintiff provided additional information in Plaintiff's Response to Defendants' Motion to Dismiss.  (Docket #31.)  In that response, Plaintiff appended his official grievance form filed January 26, 2011, with the Colorado Department of Corrections ("CDOC"), which also contains the CDOC's response.  (*Id*. at 15.)  CDOC denied the grievance, indicating, ". . . there is always a provider on-call for medical emergencies that may occur after hours.  Also, if needed, the Shift Commander can call Emergency Medical Services (the ambulance) at any time."  (*Id*.)  This and other of Plaintiff's statements in his response brief lead the Court to believe that some of the deficiencies found herein may be cured.

Thus, because it is possible Plaintiff may cure the pleading deficiencies for his constitutional claim, the Court recommends that Plaintiff be allowed to file an amended complaint within twenty-one (21) days after the District Court's Order resolving the present motion.

## CONCLUSION

In sum, the Court finds that Defendant is entitled to sovereign immunity under the Eleventh Amendment for damages claims against him in his official capacity.  Though sovereign immunity does not bar Plaintiff's request for prospective injunctive relief, Plaintiff has failed to

plausibly allege that Defendant Okentumbi violated his Eighth Amendment rights. Because a constitutional violation is a necessary component of an official capacity action, Plaintiff's claim against Defendant Okentumbi in his official capacity should be dismissed. Similarly, Defendant is entitled to qualified immunity in his individual capacity, because Plaintiff has failed to plausibly allege that Defendant Okentumbi was deliberately indifferent to Plaintiff's serious medical need or that Defendant's action or inaction caused Plaintiff substantial harm. The Court further finds that the PLRA would not bar compensatory damages but finds that Plaintiff's request for punitive damages should be dismissed. Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Defendant's Motion to Dismiss [filed April 26, 2013; docket #21] be **GRANTED**. However, because Plaintiff has not yet had an opportunity to amend his Complaint, the Court further RECOMMENDS granting Plaintiff leave to amend his complaint within twenty-one (21) days of the District Court's order to correct, if possible, the deficiencies noted herein.

Dated and entered at Denver, Colorado, this 5th day of July, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge