**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 12-cv-03075-MSK-MEH

ATORRUS RAINER,

    Plaintiff,

v.

SERGEANT EMMANUELLE OKETUNMBI,[1] in his individual and official capacities; and
JOHN AND JANE DOES 1 THROUGH 20, in their individual and official capacities,

    Defendants.

---

**OPINION AND ORDER SUSTAINING OBJECTIONS AND DENYING MOTION TO DISMISS**

---

    **THIS MATTER** comes before the Court pursuant to Mr. Rainer's Objections **(# 37)** to the Magistrate Judge's Recommendation **(# 35)** that Defendant Oketunmbi's Motion to Dismiss **(# 21)** be granted.

    The Recommendation summarizes Mr. Ranier's factual allegations. Mr. Ranier has not objected to the accuracy of that summary, and this Court therefore adopts it. In short, Mr. Ranier is an inmate in the Colorado Department of Corrections, housed at the Sterling Correctional Facility. At approximately 3:00 A.M on January 11, 2011, Mr. Ranier experienced the onset of severe pain and began vomiting blood and bile. Mr. Ranier's cellmate contacted the Living Unit office for help, and an unidentified corrections officer dispatched Defendant Oketunmbi and a second unidentified corrections officer to investigate. Mr. Oketunmbi found Mr. Ranier on the

---

[1] The Defendants have asserted that the proper spelling of the named Defendant's name is "Oketunmbi," not "Oketumbi" as appears in Mr. Rainer's Complaint. The Court deems the caption of this case to be amended as set forth above to reflect the proper spelling.

1

floor of his cell and called for "first responders" to come render medical assistance. Mr. Ranier alleges that four unidentified "responders" arrived and requested that the cell door be opened, but the supervisor (possibly an as-yet-unidentified Captain serving as Shift Commander) rejected that request, stating that no medical staff was currently on duty. A "responder" then apologized to Mr. Ranier, and advised him (as the supervisor had instructed) that medical assistance could not be summoned until 6:00 A.M. (presumably when prison medical staff arrived for their shifts). Mr. Oketunmbi continued to monitor Mr. Ranier's condition periodically, advising him to "hang in there," but otherwise provided no medical assistance.

The Recommendation states that Mr. Ranier's cell door was unlocked (apparently as a matter of routine) at 6:00 A.M., but that no medical assistance arrived at that time. At 6:30 A.M., Mr. Ranier's cellmate used an intercom to contact the facility's control room to request medical help. Corrections officers promptly escorted Mr. Ranier to the medical clinic, where he was examined, diagnosed as suffering from kidney stones, provided with fluids and pain killers, and returned to his cell. Mr. Ranier continued to experience pain throughout the day, returning to the medical clinic twice during the day and on subsequent days.

Mr. Ranier asserts a single claim pursuant to 42 U.S.C. § 1983, alleging that Mr. Oketunmbi, as well as various unidentified corrections officials (named as "John Doe" and "Jane Doe" Defendants) unreasonably delayed in providing medical care to him. He contends that the 3½ hour delay in provision of initial medical treatment was in violation of his rights under the 8th Amendment to the U.S. Constitution.

Mr. Oketunmbi moved **(# 21)** to dismiss the claim against him for failure to state a claim, and this Court referred the matter to the Magistrate Judge for a recommendation. The Magistrate Judge recommended **(# 35)** that Mr. Oketunmbi's motion be granted. The Magistrate Judge

found that: (i) Mr. Ranier adequately alleged facts showing that he suffered an objectively serious medical need; (ii) that the pain experienced by Mr. Ranier over the 3½ hour period could constitute "serious harm"; (iii) but that Mr. Ranier failed to allege facts showing that Mr. Oketunmbi was deliberately indifferent to his medical needs, as Mr. Oketunmbi asked Mr. Ranier about his condition, called for help, and continued to periodically monitor him; and (iv) that any indifference by Mr. Oketunmbi did not cause Mr. Ranier to suffer any serious harm, as Mr. Ranier continued to experience severe pain after obtaining initial medical treatment at 6:30 A.M.[2] The Magistrate Judge recommended, however, that Mr. Ranier be given leave to amend his Complaint to possibly cure these defects.

Mr. Ranier filed timely Objections (**# 37**) to the Recommendation, contending that, among other things: (i) the Magistrate Judge erred in finding that Mr. Ranier continued to experience severe pain after the initial medical treatment because once Mr. Ranier received pain medications, they "alleviated his pain for five hours"; and (ii) that the Magistrate Judge erred in finding that Mr. Oketunmbi did not demonstrate deliberate indifference because, among other things, Mr. Oketunmbi did not ensure that Mr. Ranier was taken to the medical clinic promptly at 6:00 A.M.

This Court reviews the objected-to portions of a Recommendation under a *de novo* standard of review. Fed. R. Civ. P. 72(b). In undertaking that review, the Court is also mindful of Mr. Ranier's *pro se* status, and the Court thus reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

---

[2]    The Recommendation also deal with other issues, including the observation that Mr. Rainer had not effected service on any of the unidentified Defendants, despite the passage of the deadline set for service of process by Fed. R. Civ. P 4(m); and the "dismissal" of Mr. Rainer's "claim" for punitive damages.

The Court turns first to Mr. Ranier's contention that the Complaint contains sufficient allegations to establish deliberate indifference to Mr. Ranier's medical needs. If a prisoner's medical need is objectively serious, a prison official demonstrates "deliberate indifference" to that need if the official "knows of and disregards an excessive risk to inmate health or safety." *Todd v. Bigelow*, 497 Fed.Appx. 839, 841 (10th Cir. 2012) (unpublished), *citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mr. Ranier's claim against Mr. Oketunmbi essentially boils to to an allegation that two acts by Mr. Oketunmbi evidence his deliberate indifference to his health and safety. First, Mr. Ranier contends that Mr. Oketunmbi failed to summon medical personnel at 3:00 A.M. despite the advisement of the officer that no medical personnel would be available until 6:00 A.M. Second, Mr. Rainer complains of Mr. Oketunmbi's failure to ensure that Mr. Ranier was brought for medical treatment promptly at 6:00 A.M., when medical staff finally arrived.

As to the first issue, the Court agrees with the Magistrate Judge that Mr. Oketunmbi cannot be deemed "deliberately indifferent" for failing to obtain medical assistance that was not otherwise available due to the absence of medical staff. In *Grassi v. Corrections Corporation of America*, 2008 WL 5172154 (D.Colo. Dec. 9, 2008), *aff'd* 354 Fed.Appx. 329 (10th Cir. 2009), this Court explained that "a delay in treatment that is <u>unintentional or unavoidable</u>, even though it may result in the inmate suffering additional harm, is not actionable." *Citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976) *and Hood v. Prisoner Health Services, Inc.*, 180 Fed. Appx. 21, 25 (10th Cir. 2006). If the facility's own medical personnel were unavailable, and Mr. Oketunmbi lacked the authority to secure the assistance of emergency medical personnel from outside the facility, Mr. Oketunmbi cannot be said to have been deliberately indifferent to Mr. Ranier's needs by failing to secure medical assistance that was not otherwise available.

4

However, the Court disagrees with the Magistrate Judge in reviewing the specific allegations in Mr. Ranier's Complaint. Mr. Ranier alleges that "[w]hile Sgt. Oketunmbi was not a doctor, he did have the authority under CDOC Administrative Regulation 700-02(iv)(a)(1) and (2) to transfer Plaintiff to a nearby medical treatment center, or to call for medical personnel to respond to the Plaintiff." Taken in the light most favorable to Mr. Ranier, this allegation contends that Mr. Oketunmbi had the authority, in circumstances where the facility's own medical staff was unavailable, to summon outside medical personnel. Assuming, without necessarily finding, that Mr. Oketunmbi had such authority,[3] he may have been deliberately indifferent to Mr. Ranier's medical needs by not exercising that authority in the circumstances presented here. Accordingly, the Court declines to adopt that portion of the Recommendation that concludes that Mr. Ranier failed to allege facts sufficient to demonstrate Mr. Oketunmbi's deliberate indifference.

The Court also finds that Mr. Ranier has sufficiently alleged Mr. Oketunmbi's deliberate indifference in a second respect. Taken in the light most favorable to Mr. Ranier, the allegations

---

[3] Mr. Oketunmbi's Motion to Dismiss does not attach the relevant CDOC Administrative Regulation. The Court observes that copies of current Administrative Regulations are available at CDOC's website, www.doc.state.co.us, but the current version of Administrative Regulation 700-02 took effect in April 2013, long after the events at issue here.

The Court notes that the sections of the regulation that Mr. Rainer relies upon, subsection (iv)(a)(1) and (2), do not – at least as the current regulation is drafted -- appear to support his contention that Mr. Oketunmbi was authorized to summon external medical personnel. In the current regulation, subsection (iv)(a)(1) requires "the chief medical officer and the deputy director of prisons" to develop "procedures that provide for medical levels of services" that meet various criteria. Subsection (iv)(a)(2) requires that "each facility . . . establish a Clinical Services emergency plan" that "will include arrangements" for matters such as transfer of an inmate to an offsite medical facility or the emergency summoning of external medical personnel. It may be that the Clinical Services Emergency Plan drafted by the Sterling facility did indeed give officials such as Mr. Oketunmbi authority to summon external medical personnel in an emergency, but the text of the CDOC regulation itself does not appear to do so.

However, because the text of the regulation as it existed at the time of the events herein is not properly before the Court, the Court will not speculate as to how a prior version of the regulation might differ from the current version.

in the Complaint are that the supervising official notified a "responder" that Mr. Ranier could not be seen by medical staff until 6:00 A.M. Although the Complaint does not specify whether Mr. Oketunmbi was present when this statement was made or was otherwise aware of it, such an inference can be drawn from the fact that Mr. Oketunmbi would occasionally tell Mr. Ranier to "hang in there," that he was aware that 6:00 A.M. was the time when medical help was expected.

If the Court assumes that Mr. Oketunmbi was aware that Mr. Ranier could receive medical help at 6:00 A.M., the record nevertheless reflects that hour came and went without Mr. Oketunmbi ensuring that Mr. Ranier received prompt medical attention. Mr. Ranier alleges that by 6:30 A.M., no prison official had sought to initiate the provision of medical care, and it was not until Mr. Ranier's cellmate requested medical treatment that Mr. Ranier ultimately received medical attention. The record does not clearly reflect whether Mr. Oketunmbi was still on duty at 6:00 A.M., or whether a new shift of officers had arrived, but in either event, a fair reading of the Complaint permits the inference that Mr. Oketunmbi failed to act on the understanding that Mr. Ranier required medical attention as soon as the medical staff arrived at 6:00 A.M. Based on his awareness of Mr. Ranier's serious condition, Mr. Oketunmbi was required to either personally ensure that Mr. Ranier received medical attention promptly after 6:00 A.M., or to convey to the incoming shift the need to promptly obtain such care for Mr. Ranier. The Court infers from the allegations in the Complaint that Mr. Ranier alleges that Mr. Oketunmbi did neither, and thus, the Court finds the Complaint to colorably accuse Mr. Oketunmbi of deliberate indifference.

The inquiry then turns to whether Mr. Oketunmbi's alleged deliberate indifference caused Mr. Ranier to suffer "serious harm" – that is, severe pain. The Magistrate Judge found that,

6

because Mr. Ranier returned to the medical clinic at 11:30 A.M. and again at 9:00 P.M. that same day, complaining both times of ongoing severe pain, more timely intercession by Mr. Oketunmbi would not have spared Mr. Ranier from that harm. The Magistrate Judge seems to have inferred from the Complaint that the initial treatment received by Mr. Ranier at 6:30 A.M. was largely ineffective at ameliorating his pain. This inference is inconsistent with the medical records that are attached to Mr. Ranier's Complaint. An Ambulatory Health Record recounting the initial treatment received by Mr. Ranier notes that, after he was given painkillers and IV fluids, he "states [he was] feeling better." The fact that the painkillers wore off a few hours later, requiring another return to the medical clinic, does not necessarily compel the conclusion that Mr. Ranier did not suffer additional pain because of Mr. Oketunmbi's actions. Indeed, the Ambulatory Health Record indicates that had painkillers and IV fluids been administered to Mr. Ranier at 3:00 A.M. he might have had some respite from the pain.

Accordingly, the Court finds that Mr. Ranier has adequately alleged an 8th Amendment claim against Mr. Oketunmbi, and the Court denies Mr. Oketunmbi's Motion to Dismiss.

Mr. Oketunmbi also objects to observations by the Magistrate Judge to the effect that he had failed to effect adequate service of process on the various John and Jane Doe Defendants within the time frame required by Fed. R. Civ. P. 4(m). Mr. Ranier contends that the Clerk of the Court has represented that CDOC has waived service on the John and Jane Doe Defendants **(# 9)**, although the waiver of service actually signed by the CDOC official relates only to Mr. Oketunmbi **(# 10)**. Mr. Ranier also contends that he is unable to more specifically identify the specific corrections officials currently designated as John and Jane Doe Defendants until he can obtain some discovery about the staffing of his living unit on the date in question. Ultimately, this Court need not address any questions of service or process or the efficacy of naming John

and Jane Doe Defendants, as the Magistrate Judge's Recommendation mentioned the Doe Defendants only in passing, without making any findings about them, and noting that issues relating to them "will [be] address[ed] . . . in a separate order to show cause." Thus, Mr. Ranier's "objections" to any dismissal of claims against the Doe Defendants will necessarily await that Order to Show Cause.

Accordingly, the Court **SUSTAINS** in part Mr. Ranier's Objections **(# 37)** and **DECLINES TO ADOPT** the Recommendation **(# 35)**. The Court **DENIES** Mr. Oketunmbi's Motion to Dismiss **(# 21)**.

Dated this 24th day of March, 2014.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Chief United States District Judge