**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 12-cv-03075-MSK-MEH

ATORRUS RAINER,

    Plaintiff,

v.

SERGEANT EMMANUELLE OKETUNMBI,

    Defendants.

---

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to Defendant, Sgt. Emmanuelle Oketunmbi's Motion for Summary Judgment **(#64)**, the Plaintiff Atorrus Rainer's, Response **(#70)**, and Sgt. Oketunmbi's Reply **(#73)**.

**I.**     **Jurisdiction**

Mr. Rainer asserts a single claim pursuant to 42 U.S.C. § 1983 against Sgt. Oketunmbi for unreasonable delay in providing medical care. This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.

**II.**     **Material Facts**

The parties offer different versions of pertinent events. For purposes of this motion, the Court recites the undisputed facts, and where they are controverted, takes the evidence in the light most favorable to the non-movant, Mr. Rainer.[1] Mr. Rainer is an inmate in the Colorado

---

[1] Sgt. Oketunmbi contends that Mr. Rainer's Affidavit (**#70-1**) should not be considered because it is not signed by Mr. Rainer himself, but rather by Mr. Rainer's counsel under a purported

1

Department of Corrections, housed at the Sterling Correctional Facility. In the early morning hours on January 11, 2011, Mr. Rainer experienced an onset of sharp and severe abdominal pain. Mr. Rainer was unable to stand, and his cellmate, Clifton Ashley, used the cell intercom to call the Living Unit office for help. Initially, the call went unanswered. When an officer did answer, Mr. Ashley informed the responding officer that Mr. Rainer was on the floor, throwing up blood and bile, and in an enormous amount of pain.

Sgt. Oketunmbi and an unidentified officer responded to the cell and found Mr. Rainer lying on the floor in the fetal position, surrounded by blood and vomit. The lights in the cell were on, and Sgt. Oketunmbi looked through the window to ask Mr. Rainer what was wrong. Mr. Rainer informed him that he was in severe pain and throwing up blood. Sgt. Oketunmbi called over the radio to request "first responders." (Mr. Rainer's affidavit does not elaborate on who these "responders" were, what their duties were, or other than recited here, what they did.) Around 3:00 am, the first responders arrived. They told Mr. Rainer that no medical personnel were available at the time, and that he would have to wait until 6:00 am, when medical staff would arrive.

Sgt. Oketunmbi called his supervisor, an unnamed Shift Commander, to inform him of Mr. Rainer's condition and to seek instruction. Sgt. Oketunmbi was without authority to call an ambulance or otherwise summon medical personnel from outside of the prison; only the Shift Commander could make that decision.[2] The Shift Commander told Sgt. Oketunmbi to alert the

---

power of attorney for Mr. Rainer. Because the outcome is not affected by whether the Court considers Mr. Rainer's affidavit or not, the Court will assume, without finding, that the affidavit is sufficient.

[2] By way of argument, Mr. Rainer disputes that "a 'Shift Commander' is the sole official authorized to approve transfer of inmate[s] outside the facility" for medical treatment, but he offers no evidence of this. The only proffered documentation pertinent to the prison's policies in

day shift that Mr. Rainer should be taken to the medical clinic in the morning. Sgt. Oketunmbi relayed this instruction to Mr. Rainer, and told Mr. Rainer to call using the cell intercom if his condition worsened. Sgt. Oketunmbi left the speaker on in Mr. Rainer's room so that it could be monitored. After the first responders left, Mr. Rainer started to cry and continued to vomit blood. Mr. Ashley again pressed the intercom for help, but was told by an unidentified officer over the intercom that nothing could be done. Throughout the night, Sgt. Oketunmbi continued to pass by Mr. Rainer's cell and look in the window. Mr. Rainer again asked Sgt. Oketunmbi to procure medical help. At 4:00 am, Sgt. Oketunmbi asked Mr. Rainer how he was doing. Mr. Rainer told him that he was in severe pain, and Sgt. Oketunmbi told Mr. Rainer to "hang in there," but otherwise provided no further medical assistance.

When the day shift arrived, Sgt. Oketunmbi told the incoming lieutenant that Mr. Rainer needed to be seen by medical staff. Mr. Rainer's cell door was unlocked at 6:00 A.M., but no medical assistance arrived. At 6:30 am, Mr. Rainer crawled out of his cell and another inmate used an intercom to call for help. Lt. Vicki Page responded. She found Mr. Rainer lying on the floor of his cell, covered in blood. She called for first responders, who took Mr. Rainer to the medical clinic. At the clinic, Mr. Rainer reported to a nurse that his pain level was intense – a "10" on a scale of 1-10. Medical staff performed tests on Mr. Rainer, including a "UA dip show[ing] an intense amount of blood." Mr. Rainer was given an IV and pain killers, and

---

the case of medical emergencies is Administrative Regulation 700-02. This Regulation does not address with any specificity who is authorized to seek external medical care after hours, much less whether Sgt. Oketunmbi was so authorized. Rather, the Regulation states only that "after hours on call staff will coordinate with security when an inmate needs to be transported [to a nearby hospital or clinic]" and "if an on duty nurse cannot reach the designated medical/mental health provider on-call, the nurse will make the decision whether or not the condition warrants calling an ambulance."

3

diagnosed as suffering from kidney stones. Mr. Rainer continued to experience pain throughout the day, returning to the medical clinic twice during that day and on subsequent days.

### III.     Standard of Review

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where there are no genuine disputes of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is "genuine" if the evidence presented in support of and in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, but may disregard "mere allegations," "conclusory and self-serving affidavits" or inadmissible evidence. *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir 2004); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1360-61 (10th Cir. 1997); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).

Substantive law governs the elements that must be proven for a particular claim or defense, the standard of proof, and which party bears the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). Where the moving party does not bear the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or claims that the non-moving party is obligated to prove. *See* Fed.R.Civ.P. 56(c)(1)(A); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). Once the moving party has met its burden, the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry,* 199 F.3d at 1131. If there is

insufficient evidence from which a reasonable fact-finder could find for the non-moving party as to each element of its claim, summary judgment is proper. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

**IV.    Analysis**

Mr. Rainer contends that Sgt. Oketunmbi violated his Eighth Amendment rights by unreasonably delaying medical treatment in deliberate indifference to Mr. Rainer's serious medical needs. Sgt. Oketunmbi moves for summary judgment on qualified immunity grounds.

A defendant is entitled to qualified immunity if the defendant's conduct does not violate a clearly established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In this matter, the Court first addresses whether Mr. Rainer can establish violation of a constitutional right. *See id.* at 232-33. A failure to provide, or an unreasonable delay in providing, an inmate with medical care for a serious health condition violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). A successful claim for an unreasonable delay in providing medical care in the prison context requires a plaintiff to demonstrate that: (1) objectively, the plaintiff was experiencing a serious medical need and (2) subjectively, the defendant acted with deliberate indifference towards that need. *Blackmon v. Sutton*, 734 F.3d 1237, 1244-45 (10th Cir. 2013).

The Court first turns to the objective question; that is, whether Mr. Rainer suffered from a serious medical need. A medical need is serious if it is either diagnosed by a physician as mandating treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005); *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). A medical condition that a lay person properly should

5

recognize as blatantly serious would include, for example, a badly bleeding ulcer. *See Blackmon*, 734 F.3d at 1245-46 (*discussing Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)). When the plaintiff's claim is for a delay in treatment, a medical condition is objectively serious if a delay in treatment could cause the plaintiff to suffer substantial harm. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000). Substantial harm includes considerable pain, lifelong handicap, or permanent loss. *See Garrett v. Startman*, 254 F.3d 946, 950 (10th Cir. 2001); *Beers v. Ballard*, 248 Fed. App'x 988, 991 (10th Cir. Oct. 1, 2007).

     Mr. Rainer has come forward with sufficient evidence that he was experiencing a serious medical need at the time his condition was brought to the attention of Sgt. Oketunmbi. He was in extreme pain and had vomited blood. This continued over the course of several hours. When medical personnel ultimately arrived they immediately transported him to the medical clinic where he was diagnosed as suffering from kidney stones. By his own account Sgt. Oketunmbi recognized Mr. Rainer's need for prompt medical assistance. He summoned "first responders" and sought direction from his superior. Sgt. Oketunmbi promised Mr. Rainer that he would receive medical attention as soon as medical staff arrived in the morning, continued to monitor Mr. Rainer's condition throughout the night, and asked another on-duty officer to do the same. Mr. Rainer has therefore satisfied his objective burden to show he had a serious medical need.

     The Court therefore turns to the question of whether Mr. Rainer has come forward with evidence sufficient to establish that Sgt. Oketunmbi acted with deliberate indifference. Deliberate indifference suggests more than mere negligence, but less than knowing or purposeful intent to cause harm; it requires proof that a defendant acted (or neglected to act) despite knowledge of obvious adverse consequences of his action. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Harris v. Maynard*, 843 F.2d 414, 415 (10th Cir. 1988). It has been analogized to the

6

criminal recklessness standard of conscious disregard of a substantial risk of harm. *Blackmon*, 734 F.3d at 1244-45. In the specific context of a claim based on a failure to procure medical care, the Tenth Circuit held that an officer acts with "deliberate indifference" when he "knows of and disregards an excessive risk to inmate health or safety." *See Todd v. Bigelow*, 497 Fed. App'x 839, 841 (10th Cir. Sept. 27, 2012) (*citing Farmer*, 511 U.S. at 837).

In sum, an Eighth Amendment violation arises only when a defendant knowingly disregards risk to an inmate. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Thus, as the Court recognized in its Order on Sgt. Oketunmbi's Motion to Dismiss, a defendant cannot be said to have disregarded a serious risk of harm in failing to obtain medical assistance that was not otherwise available due to the absence of medical staff.[3] By this reasoning, if a defendant lacked the ability or authority to provide medical treatment for an inmate, including the ability to summon others capable of providing such treatment, the defendant cannot be held liable regardless of any resulting harm to the inmate.[4] Likewise, a defendant who acted to the full extent of his authority in attempting to secure medical assistance does not deliberately disregard an inmate's health.

---

[3] *See Boyett v. Cnty. of Washington*, 282 Fed. App'x 667, 673-74 (10th Cir. June 19, 2008) (there is no Eighth Amendment violation unless prison officials intentionally or recklessly deny medical care; if the care is unintentionally inadequate or simply not available, there is no violation).

[4] It is worth noting the limited parameters of the medical care prisons must provide in order to comply with the Eighth Amendment. There is no *per se* requirement that a prison afford its inmates with twenty-four hour access to a medical doctor. *See Boyett*, 282 Fed. App'x at 673 (*citing Farmer*, 511 U.S. at 833-34). Although a prison should provide trained personnel, such as guards with EMT certification at all hours, access to a doctor is not guaranteed and no constitutional violation occurs unless medical care is intentionally or recklessly denied." *Boyett*, 282 Fed. App'x at 673-74 (*referring to Estelle*, 429 U.S. 104-05).

Unlike many cases, the dispute here does not turn on whether Sgt. Oketunmbi recognized the severity of Mr. Rainer's medical condition, but instead on whether he deliberately disregarded Mr. Rainer's needs, during what the Court categorizes as two time frames. The first includes the time that elapsed between approximately 3:00 am, when Sgt. Oketunmbi first learned of Mr. Rainer's condition, until sometime around 6:00 am, when Sgt. Oketunmbi was replaced by the day shift. Mr. Rainer contends that Sgt. Oketunmbi was obligated during this time to ensure that Mr. Rainer received after-hours medical treatment, be it from internal medical staff or, if none was available, external staff. But Mr. Rainer has produced no evidence that internal medical staff was available, nor that Sgt. Oketunmbi was authorized to call external staff or transport Mr. Rainer to a nearby medical facility outside of the prison. Instead, Mr. Rainer confirms that Sgt. Oketunmbi called for first responders and, when the first responders were unable to help, Sgt. Oketunmbi periodically checked on Mr. Rainer throughout the night. The only remaining available evidence to this affect comes from Sgt. Oketunmbi, who stated that he: (1) called the medical department and learned that no nurses were available; (2) called the Shift Commander to inform him of Mr. Rainer's condition, only to be instructed to wait until the day shift arrived and alert the incoming officer of the need to transport Mr. Rainer to the medical clinic in the morning; (3) checked on Mr. Rainer through the night and asked the officer in Mr. Rainer's Living Unit to do the same. None of these statements are contradicted by Mr. Rainer's evidence. Because Mr. Rainer has not identified any action Sgt. Oketunmbi could have taken to help Mr. Rainer, but knowingly neglected to do, Mr. Rainer cannot show deliberate indifference by Sgt. Oketunmbi during this time.[5]

---

[5]Arguably, Mr. Rainer might be able to assert an Eighth Amendment claim against the Shift Commander (who, being fully advised of Mr. Rainer's serious medical needs and empowered to

8

The Court turns to the second relevant time frame: from 6:00 am to 6:36 am. Viewed in the light most generous to Mr. Rainer, Mr. Rainer offers only circumstantial evidence of any failure to act by Sgt. Oketunmbi. He states that when his cell door was opened at 6:00 am, no prison official came to take him to the medical clinic. It was not until Mr. Rainer crawled out of his cell and another inmate called for assistance over the intercom, that first responders arrived to take him to the medical clinic. But this does not provide the Court with any evidence as to what Sgt. Oketunmbi should or could have done during this time.[6] There is no evidence that, for example, once the day shift "assumed post," Sgt. Oketunmbi was authorized to take Mr. Rainer to the medical clinic. Nor is there any evidence that Sgt. Oketunmbi neglected to inform the incoming lieutenant of Mr. Rainer's needs. Accordingly, the Court is left with no intentional act or omission on Sgt. Oketunmbi's part from which the Court could find or even infer deliberate indifference.

Accordingly, the Court finds that Mr. Rainer has not come forward with sufficient evidence to establish a *prima facie* case of deliberate indifference in failing to secure immediate medical care for Mr. Rainer.[7]

### V.     Conclusion

---

summon emergency medical help from outside the prison, chose not to), but absent any proof that Sgt. Oketunmbi had the ability to do more than he did, a claim against Sgt. Oketunmbi fails.

[6] Again, the only evidence comes from Sgt. Oketunmbi, who states that when the day shift lieutenant assumed post, he told the lieutenant about Mr. Rainer's condition and that Mr. Rainer needed to be taken to the medical clinic.

[7] Having found no constitutional violation occurred, the Court need not address the second prong of Sgt. Oketunmbi's qualified immunity defense, that is, whether any constitutional violation was clearly established.

The Court hereby **GRANTS** Sgt. Oketunmbi's Motion for Summary Judgment **(# 64)** on the claim against him. The Clerk of the Court shall enter judgment in favor of Sgt. Okteunmbi and close this case.

Dated this 4th day of November, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge